**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

CIVIL ACTION NO. _____
3:21-CV-38-DJH

*ELECTRONICALLY FILED*

**COUNTRY MUTUAL INSURANCE COMPANY**                    **PETITIONER**

**v.**

**SMITHFIELD GREEN CONDOMINIUM COUNCIL, INC.**          **RESPONDENT**

**Serve: Ted White, Registered Agent**
   **8003 Lyndon Center Way, Suite 101**
   **Louisville, KY 40222**

**PETITION FOR DECLARATORY RELIEF TO A) APPOINT UMPIRE**
**AND B) INSTRUCT APPRAISAL PANEL**

\* \* \* \* \*

Petitioner, Country Mutual Insurance Company ("Country"), through counsel, hereby petitions this Court pursuant to 28 U.S.C. § 2201, for a declaration of rights; namely, to appoint an umpire for the purposes of fulfilling certain rights and responsibilities between Petitioner and Respondent, Smithfield Green Condominium Council, Inc. ("Smithfield"), with respect to a dispute resolution process provided in an insurance policy issued by Country to Smithfield. In support of this Petition, Country states as follows:

1.      Country Mutual Insurance Company is a corporation organized under the laws of Illinois, with a principal place of business located at 1701 N. Tonawanda Avenue, Bloomington, Illinois. Country is authorized by the Kentucky Department of Insurance to issue lines of property and casualty insurance coverage in Kentucky.

2.      Country offers a habitational line of commercial insurance products, including property and casualty policies to apartment and condominium complexes. MiddleOak is the brand

name of this particular division of Country's business.

3.      Smithfield is a corporation organized under the laws of Kentucky, with a principal place of business located at 8003 Lyndon Way, Suite 101, Louisville, KY 40222.

4.      This Court has subject matter jurisdiction over this matter pursuant to the aforementioned statutory reference, and as set forth in 28 U.S.C. 1332 and Fed. R. Civ. P. 57, as the ultimate amount in controversy exceeds $75,000.00[1] and the parties have complete diversity of citizenship. An actual case or controversy exists between Country and Smithfield, as the parties have the right to seek appointment via this Court of an umpire; the inability to agree upon an umpire prevents either party from proceeding forward under the dispute resolution mechanism in the Policy, as the appraisal cannot occur without an umpire.

5.      At all relevant times, Country had in full force and effect with Smithfield a policy of casualty insurance covering certain real property located at 7401 Smithfield Green Drive, Prospect, KY (the "Condominium Property"). A true and accurate copy of the relevant portions of the insurance policy is attached to this petition as Exhibit 1[2] (Policy No. WA0200157292-03, the "Policy"). Country first issued the Policy to Smithfield on August 18, 2017, with subsequent renewals.

6.      On or about February 27, 2020, Country received notice of a loss being claimed by Smithfield under the Policy. The loss notification claimed damage to the Condominium Property as the result of a hail and windstorm event occurring many months earlier, on June 3, 2019 (the "Storm Loss").

---

[1] It is believed that, as will be explained *infra*, the amount in controversy concerning the insurance claim could exceed $300,000.00.
[2] Exhibit 1 consists of the declarations page and the main insuring agreement; there are other forms and endorsements which constitute the Policy, but they are immaterial to this cause.

7.      Despite Smithfield's failure to follow the Policy's requirement that notice of a loss be given as soon as practicable, Country in good faith investigated the Storm Loss, including a physical inspection of the Condominium Property. As part of its investigation, Country retained the services of a qualified engineer to analyze the roofs on the Condominium Property. The engineering report determined that the Condominium Property did not have any indication of hail-related damage, and therefore concluded that the Storm Loss did not consist of any hail damage to the Condominium Property.

8.      The engineering report did conclude that a handful of shingles scattered across several buildings had evidence of damage, such as nail pops, separation of the fiberglass mat, or otherwise a) having come unsealed or b) missing (collectively, the "Impaired Shingles"). The engineering report was unable to conclude with any certainty whether a) the shingles noted had suffered damage due to a wind event and if so, b) when any such wind event had occurred. Country communicated these findings to Smithfield. Smithfield disagreed with these findings, but did not present any evidence or other reports to contradict the engineer's conclusions.

9.      Country subsequently reviewed available weather records in more detail from nearby reporting stations, and they did not indicate that any recorded wind event strong enough to cause shingle damage had occurred at any time in reasonable proximity to June 3, 2019.

10.     Despite the substantial prejudice that resulted to Country from Smithfield's late notice of the Storm Loss – including but not limited to the loss of a timely ability to inspect the Condominium Property close in time to the claimed date of loss – Country proceeded to calculate the amounts payable under the Policy based upon the Impaired Shingles identified by the engineer, assuming that there had in fact been a wind event on June 3, 2019 strong enough to cause shingle loss/damage.

11.     The loss was calculated based upon the cost of replacing each of the Impaired Shingles with a shingle of like kind and quality; in fact, the identified shingle was the exact same manufacturer and design as the existing shingles and the Impaired Shingles. The amount calculated by Country as the cost of replacing the Impaired Shingles barely exceeded the applicable deductible under the Policy, and payment was issued to Smithfield accordingly.

12.     Smithfield disagreed with the amount paid by Country. Smithfield took the position that it was entitled to payment from Country of the entire amount it would cost to replace all shingles on all roof slopes on all buildings. Smithfield asserted that anything less than the full replacement of all shingles on all roof slopes on all buildings would result in an unsightly appearance, and stated that applicable Kentucky state administrative regulations required such a full replacement.

13.     Country notified Smithfield in writing on or about September 10, 2020, after having reviewed additional weather reporting records, that it was reserving its rights to deny any additional indemnity coverage relating to the Storm Event. It also notified Smithfield in writing that its investigation revealed that the only known widespread severe wind event per public reports in the area occurred on May 30, 2018.

14.     Country's reservation of rights included the following discrete topics pertinent to the Policy: a) that some of the Impaired Shingles were not damaged by any covered cause of loss; b) that Smithfield failed to comply with the conditions precedent in the Policy concerning timeliness and form of loss notification; c) that in the event that the May 30, 2018 date was the actual date on which any loss to the Condominium Property occurred, that the Policy's requirement that suit for any indemnity due and owing be brought within two years of the loss, meant that claims for such were time-barred; d) the terms of the Policy did not require Country to pay for the

cost of repair or replacement of any undamaged property; and e) the replacement of the Impaired Shingles with identical property would in fact result in a "reasonably uniform appearance" to the Condominium Property.

15.     In fact, since first constructed, the Condominium Property has undergone repairs and improvements, including but not limited to the installation of dormers and skylights in several of the buildings and their owners' units. In the process of this construction, many of the shingles surrounding these improvements were removed and replaced with either an identical brand and manufacturer of shingles as in the original construction, or a substantially similar brand. However, because of the different age of these shingles, there is a perceptible difference in visual appearance between the "newer" and "original" versions of the shingles, as the two versions do not perfectly match each other.

16.     After Smithfield received the reservation of rights letter, it initially claimed that the date of loss may have been the May 30, 2018 date identified by Country, but also listed some other alternative dates subsequent to May 30, 2018, on which the purported windstorm might have occurred. To this date, Country is still not certain when Smithfield asserts that the windstorm actually occurred, or whether the Impaired Shingles came about due to separate weather events.

17.     In October of 2020, Smithfield made a written demand upon Country to refer the dispute to an appraisal panel, as called for in the Policy. Smithfield's demand was made through its selected appraiser, The Howarth Group, Inc.

18.     In response, Country selected its appraiser, Doug Shively of Sedgwick Claims Services. In notifying Smithfield of its appraiser selection, Country stated that its participation in this process was predicated upon both appraisers and the umpire agreeing to follow the express directives of *Woods Apartments LLC v. U.S. Fire Ins. Co*., 2013 WESTLAW 3929706 (W.D. Ky.

2013), *Cincinnati Specialty Underwriters Ins. Co. v. C.F.L.P. 1*, LLC, 2015 WESTLAW 5793951 (W.D. Ky. 2015).

19.     Smithfield did not expressly agree to this request, deferring it to their appraiser's judgment. Later, Smithfield's appraiser declined to confirm that he would follow the directives as set forth by this Court in *Woods Apartments* and *Cincinnati Specialty*.

20.     Moreover, it is not proper for an appraiser or umpire to pass determination on anything other than the amount of the loss from a covered cause of loss. The Policy does not provide that Country or Smithfield is entitled to resolution by an appraisal panel of anything other than the "amount of loss."

## COUNT I – DECLARATION OF RIGHTS AS TO
## APPOINTMENT OF UMPIRE AND INSTRUCTION OF APPRAISAL PANEL

21.     Country incorporates by reference all factual allegations previously recited, as set forth in full.

22.     The Policy reads, in relevant part (the "Appraisal Clause"):

**2.     APPRAISAL**

If we and you fail to agree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction.

The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a.     Pay its chosen appraiser; and
b.     Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

23.     The umpire, in accordance with the holdings of *Motorists Mut. Ins. Co. v. Post*, 2005 WL 2674987 (E.D. Ky. 2005), is limited only to determining, if disputed between the parties,

6

damages directly from a covered cause of loss. Further, per *Motorists Mut.*, the court may instruct an appraisal panel as to the scope of specific issues to be considered, in order to ensure the proper role of the appraisal process.

24.     The appraisers selected by Country and Smithfield, although they have each participated in good faith, have simply been unable to agree upon the identity of an umpire for purposes of completing the panel as to the amount or cause of loss.

25.     Per the Appraisal Clause, the parties are to petition a court for the appointment of an umpire, if the selected appraisers cannot agree upon the selection of an umpire. The costs of the umpire's appraisal are to be shared evenly by Country and Smithfield per the Appraisal Clause.

26.     Accordingly, Country requests that this Court grant the requested relief, by entering an appropriate order appointing an individual from among the list of names selected by Country's appraiser, Doug Shively of Sedgwick Claims Management (a copy of which is attached hereto as Exhibit 1, along with relevant information concerning each candidate and available CVs attached collectively as Exhibit 2) to serve as the umpire.

27.     Further, Country seeks a declaration of rights that, regardless of the identity of the umpire, that the appraisal shall follow these guidelines:

a.     That it not be determinative of any issues aside from either the amount of loss to the Condominium Buildings directly resulting from wind or hail damage, and the appraisal panel is specifically barred from making any binding determination on either i) the date on which the loss occurred or ii) whether Smithfield complied with the Policy's conditions precedent;

b.     That in determining the amount of loss, that the appraisers and umpire should consider only damage resulting directly from the Storm Loss, and must determine the cost to repair or replace the damage to the Condominium Buildings with material of comparable kind and quality to obtain an overall reasonably uniform appearance.

28.     Country seeks no award of monetary damages, costs, or any other relief from this Court, other than a declaration that Smithfield share evenly with Country the costs of the umpire's activity.

29.     Country seeks the appointment of an umpire and instruction of the appraisal panel without prejudice to any other defenses it may have under applicable law, including but not limited to those outlined in Paragraph 14.

WHEREFORE, Country prays for the following relief:

a.     That this Court enter an Order declaring the following relief: appointing an umpire from the list of individuals identified in Exhibit 2 to conduct an appraisal as concerning the cause of the Storm Loss and the amount of the Storm Loss; or alternatively, that this Court appoint an umpire determined by this Court to conduct an appraisal as concerning the cause of the Storm Loss and the amount of the Storm Loss, with the costs thereof to be borne evenly between Country and Smithfield;

b.     That the appraisers and umpires be instructed as to the matters identified in Paragraph 27 *supra*, with respect to their conduct; and

c.     Such further relief as is just and appropriate under the circumstances.

Dated this the 20th day of January, 2021.


Respectfully submitted:


 _/s/ Matthew D. Ellison_
**MATTHEW D. ELLISON**
Fowler Bell PLLC
300 W. Vine Street, Suite 600
Lexington, KY 40507-1751
(859) 252-6700
(859) 255-3735 fax
mellison@fowlerlaw.com
**COUNSEL FOR PETITIONER,**
**COUNTRY MUTUAL INSURANCE COMPANY**

4847-8640-4566, v. 1